UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KENNETH CRAWFORD and
DANETTE LEE,

                Plaintiffs,

                                  Case No. 04-CV-73856
vs.                             HON. GEORGE CARAM STEEH

WASHINGTON MUTUAL, INC.,

                Defendant.
_____/

OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT

INTRODUCTION

This lawsuit, stemming from plaintiffs' failed application for refinancing of a home

loan, is currently before the court on defendant's motion for summary judgment. Because

the court finds no question of material fact exists as to the elements required for counts of

promissory estoppel or fraudulent or negligent misrepresentation, defendant's motion is

granted as set forth below and plaintiffs' complaint is dismissed in its entirety.

BACKGROUND

In the fall of 2003, plaintiffs Kenneth Crawford ("Crawford") and Danette Lee

("Lee") made a joint application to defendant Washington Mutual to refinance the

mortgage on their home. They were referred to Washington Mutual representative Joe

Lockwood[1], and signed a "Master Loan Application" on September 23, 2003.

Approximately one week later, plaintiffs received a "Commitment Letter," dated

---

        1 Their first contact with Mr. Lockwood was while he worked for General Motors Acceptance
Corporation. When he became a Washington Mutual representative shortly thereafter, they applied for a
mortgage with that organization.

September 30, 2003, which stated that they had been approved for a mortgage in the amount of $141,600 with an initial interest rate of 5.375%.  The letter set forth certain terms and conditions that were required to be met prior to closing on the loan.

Plaintiffs never did close on the refinance loan with Washington Mutual.  They generally assert that "Mr. Lockwood would continually tell Mrs. Lee that he would be able to close the loan that week and Mrs. Lee would arrange to take time off work to close and then she would not hear from Mr. Lockwood," and that "[a]lthough Plaintiffs ran into some trouble with some of the written conditions for the loan[2], Mr. Lockwood always assured them that the loan would go through in spite of these problems." Plaintiffs' Brief in Opposition to Defendant's Motion for Summary Judgment, p. 2, citing Danette Lee deposition, pp. 17-18, 20, 25, 34-35.  Plaintiffs state that any time they contacted Mr. Lockwood, he would act like the closing was imminent, but nonetheless it would not occur.  They assert that they "were so adversely affected by the transaction that they could not bring themselves to attempt another refinance until approximately 6 months later."  Id., p. 3.

Plaintiffs filed their four count complaint in U.S. District Court on the basis of diversity of citizenship on September 30, 2004, asserting defendant's violation of the Michigan Consumer Protection Act; Mich. Comp. Laws Ann. § 445.901 (Count I[3]); promissory estoppel (Count II); fraudulent misrepresentation (Count III); and negligent

---

2 Although it is unclear what plaintiffs are referring to here, as discussed in the analysis section, below, there is uncontested evidence both that the house did not appraise for the value required by the Commitment Letter (the appraisal was for $190,000, rather than the minimum required value of $195,000) and that Crawford was laid off in the fall of 2003.

3 This count was dismissed by stipulation of the parties on January 26, 2005.

2

misrepresentation (Count IV).  Plaintiffs' contentions as stated in the complaint include that defendant promised to provide a mortgage at an interest rate of 6.8%[4], did not follow through with the promise, and that plaintiffs declined to pursue other mortgage opportunities as a result of this promise.

Defendant has moved for summary judgment as to the three remaining counts. Following briefing on the motion, the court held oral argument on November 22, 2005. On that date, the court gave both sides seven days to submit supplemental briefing concerning the application of Mich. Comp. Laws Ann. § 566.132(2) to plaintiffs' claims, which only the defendant submitted.  The court's disposition of the motion is set forth below.

STANDARD

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  See Redding v. St. Eward, 241 F.3d 530, 532 (6th Cir. 2001).  The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice.  The procedure is not a disfavored procedural shortcut.  Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986); see also Cox v. Kentucky Dept. of Transp., 53 F.3d 146, 149 (6th Cir. 1995).

---

4 Although immaterial to the court's determination on this motion, the court notes that plaintiffs' inclusion of this number in the complaint was in error, as the "Commitment Letter" itself stated an initial interest rate on an adjustable rate mortgage of 5.375%.  This error was apparently acknowledged by plaintiff at a later date in the proceedings.

3

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Amway Distributors Benefits Ass'n v. Northfield Ins. Co., 323 F.3d 386, 390 (6th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences therefrom must be construed in the light most favorable to the non-moving party.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Redding, 241 F.3d at 532 (6th Cir. 2001).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original); see also National Satellite Sports, Inc. v. Eliadis, Inc., 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial."  First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 270 (1968); see also McLean v. 988011 Ontario, Ltd., 224 F.3d 797, 800 (6th Cir. 2000).  Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party.  Anderson, 477 U.S. at 248, 252.  Rather, there must be evidence on which a jury could reasonably find for the non-movant.  McLean, 224 F.3d at 800 (citing Anderson, 477 U.S. at 252).

4

<u>ANALYSIS</u>

<u>Count II: Promissory Estoppel</u>

The elements of a claim of promissory estoppel are: (1) a promise, (2) that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of the promisee, and (3) that in fact produced reliance or forbearance of that nature in circumstances such that the promise must be enforced if injustice is to be avoided.  <u>Novak v. Nationwide Mut Ins Co</u>, 235 Mich.App. 675, 686-687(1999).

In arguing for summary judgment on this claim, defendant points to the September 30, 2003 Commitment Letter, which included provisions such as "[u]nless and until my Pricing Package is locked, the terms and conditions of this Commitment are subject to change;" and that the lender would have no obligations under the agreement if the borrowers' financial situation suffered any "material adverse change." The court notes the provision near the bottom of the document, stating that "the lender shall have no obligation hereunder unless all the foregoing conditions have been satisfied in full, all required documents are signed, and funds actually disbursed on or prior to October 18, 2003."  Furthermore, defendant points to testimony of plaintiff Kenneth Crawford concerning his lay off in October, 2003, and additional evidence that the home's appraisal of $190,000 did not meet the minimum requirement of $195,000 set out in the Commitment Letter.

Plaintiffs assert that regardless of such provisions, they reasonably relied on Joe Lockwood's statements that the closing would take place, and held off on seeking other lenders for the transaction during the time period they were in contact with Lockwood.

5

They contend this resulted in a higher interest rate when they did refinance, and that multiplying the difference over the life of the loan has caused them damages in excess of $75,000.

The court is convinced that summary judgment should enter for defendant on this count. The court agrees that the case defendant relies on in its brief, <u>First Security Savings Bank v. Aitken</u>, 226 Mich. App. 291, 312 (1997) (overruled on other grounds, 460 Mich. 446 (1999)), demonstrates that in the context of a loan application such as the one at bar, where there is a conditional promise given by the lender, Lockwood's alleged statements about closing being a sure thing cannot rise to the level of a promise which would satisfy the elements of promissory estoppel. In fact, as defendant demonstrates, Crawford himself was aware that his employment status could affect defendant's willingness to complete the loan transaction:

Q. Would you agree with me that if on October 10th Washington Mutual learned that you weren't employed by your brother any longer that that could have an effect on Washington Mutual's decision whether or not to make you a loan?
A. Yeah, I had a conversation that, yeah, I needed to be employed full time.
Q. Who did you have that conversation with?
A. I believe with Joe Lockwood.

Crawford deposition, p. 44. Likewise, Ms. Lee's deposition testimony demonstrated her knowledge that certain requirements had to be met, or remain fixed, to secure closing on the loan.[5]

---

5 In fact, plaintiffs' depositions revealed that the refinancing they ultimately secured on the home was approved for and placed in Ms. Lee's name only, as Mr. Crawford's subsequent self-employed status did not meet lenders' mortgage requirements. See, e.g. Crawford deposition pp. 53-54.

Unfortunately in this case, the requirements for closing the loan were not met. Although neither the evidence nor defendant's briefs indicate exactly why the loan was not closed, it is clear that Mr. Crawford's employment status changed at a crucial point in the loan process:

Q.  And in September and October of 2003, were you still employed with–by your brother?
A.  In September, yes.
Q.  And how about in October?
A.  I was not.  I was laid off for a period because my brother going through downscaling (sic), so I took some time off in there.
Q.  When were you laid off?
A.  In October.
Q.  Do you remember when in October?
A.  Middle of.
Q.  Were you aware that on October 10th of 2003 a Washington Mutual representative talked to your brother Terry and Terry represented to Washington Mutual that you weren't employed by him any longer?
A.  On the 10th?
Q.  Yes.
A.  Yeah, we were going through some weird times at that time and I thought it was the middle of October but–
Q.  It might have been the 10th?
A.  Possibly.  Things got slow and the hopes were that they would pick up and I would, you know, continue with him.

Crawford deposition, p. 43.

In summary, the court finds that although plaintiffs pinned their hopes of a lower mortgage rate on statements made to them by Joe Lockwood during the October-November 2003 time frame, such hopes should not have risen to the level of an expectation, given the circumstances.  Assuming, for the purposes of this motion, that such verbal statements made by Lockwood could be actionable in the context of a real estate transaction, and could be construed as promises, plaintiffs' expectations were unreasonable, considering the Commitment Letter terms and conditions, the change in

7

employment status for Crawford, and the appraisal amount of $190,000, which was $5,000 lower than the minimum required by the Commitment Letter.  Judgment will enter for defendant on this count.

<u>Counts III and IV: Fraudulent Misrepresentation and Negligent Misrepresentation</u>

Defendant argues for dismissal of these counts on the basis that under Michigan law, actions for misrepresentation "cannot be predicated on a promise of future performance," quoting <u>Brayton Engineering, Inc. v. KR Racing Team, Inc.</u>, 1996 U.S. Dist. LEXIS 7987, *4-5 (W.D. Mich. 1996).  Defendant cites to <u>Mieske v. Harmony Electric Co.</u>, 278 Mich. 61, 66 (1936) for the proposition that a "mere broken promise" cannot fuel an action for fraud or misrepresentation, unless a promise of future action is made in bad faith, and there is evidence that the defendant had no intent, at the time the promise was made, to perform the promise.  <u>Hi-Way Motor Co. v. Int'l Harvester Co.</u>, 398 Mich. 330, 337-38 (1976).

The court agrees that Lockwood's statements are not actionable as either fraudulent or negligent misrepresentation.  It appears that upon the application made by Crawford and Lee, Lockwood secured a Commitment Letter and began discussing closing dates with the plaintiffs.  It is not disputed that at some point after that, the low appraisal came back[6] and Crawford's employment changed.  Defendant offers evidence in the form of Washington Mutual in-house email correspondence, demonstrating efforts

---

6 Plaintiffs apparently assert this fact was not communicated to them, but do not dispute its existence.

8

to work on the mortgage despite the low appraisal.[7]  The court is in agreement that,

even if plaintiffs could establish that Lockwood made a promise to close the loan, there

is no evidence that such a promise was made in bad faith.  For this reason, judgment is

appropriate for defendant on these counts as well.[8]

Mich. Comp. Laws Ann. § 566.132(2)

Finally, defendant asserts in its supplemental brief that the Michigan statute of

frauds relating to financial institutions bars all of plaintiffs' claims in this litigation.  That

provision states:

> An action shall not be brought against a financial institution to enforce any
> of the following promises or commitments of the financial institution unless
> the promise or commitment is in writing and signed with an authorized
> signature by the financial institution:
>
> (a) A promise or commitment to lend money, grant or extend credit, or
> make any other financial accommodation.

Mich. Comp. Laws Ann. § 566.132(2).  Plaintiffs do not contend that defendant is

exempted from this provision for any reason; in fact, plaintiffs did not file any

supplemental briefing on this provision, despite the court's invitation to do so.  Plaintiffs

therefore point to no evidence of any writing following the commitment letter[9], "signed

---

7 Although plaintiffs assert that in fact this *constitutes* evidence of bad faith (i.e. Lockwood continued promising a closing without disclosing that these problems were brewing in the background), the court notes that plaintiffs have not alleged any such statement on any particular date.

8 For these reasons, the court will not consider defendant's remaining, alternative arguments that in an action for misrepresentation, it must be established that plaintiffs' reliance was reasonable; that plaintiffs have not met the heightened evidentiary standard applicable to fraud claims; that the damages in the case are too speculative for recovery in a tort action; and that plaintiffs' damages were caused by their own failure to mitigate.

9 As discussed in defendant's supplemental brief, although counsel for plaintiffs asserted at oral argument that numerous "commitment letters" were issued by defendant, the court has not been presented with any other than that dated September 30, 2003, and as defendant points out, plaintiff Crawford acknowledged at deposition that this was the only such letter.

9

with an authorized signature by the financial institution," which might support their

claims, and the court is aware of no such evidence.  The court is thus convinced that

this statute provides an alternative basis for dismissal of plaintiffs' claims.

<u>CONCLUSION</u>

For the foregoing reasons, defendant's motion for summary judgment is

GRANTED as to all remaining claims, and the action is DISMISSED in its entirety.




<u>S/George Caram Steeh</u>
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

Dated:  December 14, 2005


CERTIFICATE OF SERVICE


Copies of this Order were served on the attorneys of record on December 14, 2005, by electronic and/or ordinary mail.



<u>S/Josephine Chaffee</u>
Secretary/Deputy Clerk